UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RONALD S. PRISLEY,<br>      *Plaintiff*,<br><br>v.<br><br>TOWN OF DEEP RIVER PLANNING<br>AND ZONING COMMISSION,<br>      *Defendant.* | No. 3:18-cv-01065 (KAD)<br><br><br><br><br>August 5, 2020 |

**MEMORANDUM OF DECISION**
**RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 26)**

Kari A. Dooley, United States District Judge:

Plaintiff Ronald S. Prisley ("Prisley" or the "Plaintiff") filed this action against the Town of Deep River Planning and Zoning Commission (the "Commission," or the "Defendant") pursuant to 42 U.S.C. § 1983 alleging an equal protection "class of one" claim based upon the Commission's denial of Prisley's 2014 re-subdivision application for a property located in Deep River, Connecticut. Pending before the Court is the Commission's motion for summary judgment (ECF No. 26), to which Prisley has objected (ECF No. 27), and to which the Commission has filed a reply. (ECF No. 28.) Oral argument was held on July 15, 2020. (ECF No. 38.) For the reasons that follow, the Defendant's motion for summary judgment is GRANTED.

**Standard of Review**

The standard under which the Court reviews motions for summary judgment is well-established. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that 'might affect the outcome of the suit under the governing law' and as to which 'a reasonable jury could return a verdict for the

1

nonmoving party.'" *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 94 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The inquiry conducted by the Court when reviewing a motion for summary judgment focuses on "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. Accordingly, the moving party satisfies its burden under Rule 56 "by showing . . . that there is an absence of evidence to support the nonmoving party's case." *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 105 (2d Cir. 2002) (*per curiam*) (quotation marks and citations omitted). Once the movant meets its burden, "[t]he nonmoving party must set forth specific facts showing that there is a genuine issue for trial." *Irizarry v. Catsimatidis*, 722 F.3d 99, 103 n.2 (2d Cir. 2013) (quoting *Rubens v. Mason*, 527 F.3d 252, 254 (2d Cir. 2008)). "[T]he party opposing summary judgment may not merely rest on the allegations or denials of his pleading" to establish a disputed fact. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted). The standard thus requires "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (internal citations omitted).

In assessing the presence or absence of a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (*per curiam*) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)). "In deciding a motion for summary judgment, the district court's function is not to weigh the evidence or resolve issues

of fact; it is confined to deciding whether a rational juror could find in favor of the non-moving party." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).

**Material Facts**

The following facts are drawn from the Defendant's Local Rule 56(a)(1) Statement of Undisputed Material Facts (ECF No. 26-2) and exhibits in the record. The Plaintiff has admitted each of the factual propositions set forth in the Defendant's Local Rule 56(a)(1) Statement (*see* ECF No. 27-1) and acknowledges that there are no facts in dispute. (Pl.'s Mem. at 1.)

This action arises out of the denial of a re-subdivision application submitted by Prisley to the Commission for a parcel of real estate located at 164 Cedar Lake Road in Deep River, Connecticut (the "Property"). Plaintiff purchased the Property in 2002 and first requested a subdivision in 2006. (Def.'s Local Rule 56(a)(1) Statement ¶ 32.) The application at issue here was Plaintiff's sixth application for re-subdivision of the Property. (*See* Cathie Jefferson Mem. at 1, Def.'s Ex. F, ECF No. 26-8.) The Commission denied Prisley's first complete subdivision application, which was submitted in 2010, for several reasons, including non-compliance with the Deep River Zoning Regulations requiring that: (1) the building rectangle maintain a side coincident with the street line; (2) rear lots not be stacked or nested; and (3) the maximum number of rear lots not exceed 30%. (Def.'s Local Rule 56(a)(1) Statement ¶¶ 1–2.) Prisley appealed the denial to the Superior Court. In its November 14, 2012 decision, the Superior Court upheld the Commission's rejection of Prisley's application principally because he failed to submit a fire protection plan but also found support for the Commission's other stated reasons for the denial. (*See* Nov. 2012 Decision at 7, Def.'s Ex. A, ECF No. 26-3.)

Prisley submitted the re-subdivision application at issue here to the Commission on October 16, 2014. (Subdivision Checklist, Def.'s Ex. B, ECF No. 26-4; Cathie Jefferson Aff. ¶ 8,

3

Def.'s Ex. C, ECF No. 26-5.)  He subsequently requested waivers of the subdivision regulations he was unable to satisfy: the building rectangle requirement; the rule prohibiting the stacking or nesting of rear lots, and the requirement that rear lots not exceed 30%.  (Def.'s Local Rule 56(a)(1) Statement ¶ 5; Jefferson Aff. ¶ 10; Jefferson Mem. at 2–3.)  The subdivision regulations authorize the Commission to grant a waiver of any of its requirements by a three-quarters vote of all members and based upon a finding of "extraordinary hardships or practical difficulties."  (*See* Jefferson Mem. at 2 (quoting Deep River Subdivision Regulation 3.5.).)  For each approved waiver the Commission must further find that:

> (1) The granting of a waiver will not have a significant adverse impact on adjacent property or on public health and safety; and
>
> (2) The conditions upon which the request for a waiver are based are unique to the proposed subdivision for which the waiver is sought and are not applicable generally to other potential subdivision[s]; and
>
> (3) The waiver will not create a conflict with the provision of the Zoning Regulations, the Plan of Development, town ordinances, or regulations of other Town boards and commissions.

(*Id.* (quoting Subdivision Regulation 3.5.1).)  Waiver requests must be submitted in writing at the time of the initial subdivision application.  (*Id.*)

In her January 28, 2015 memorandum to the Commission, Zoning Enforcement Officer Cathie Jefferson ("Jefferson") noted that with respect to the first waiver request, regarding the building rectangle requirement, Prisley's attorney had referenced a prior subdivision application that Prisley believed was approved without meeting the requirement. (Jefferson Mem. at 3.)  In response, the Commission reviewed that other application and determined that "while the building rectangle was not shown at the street line, both lots were able to demonstrate that they contained the frontage and lot width to meet the requirement."  (*Id.*)  As to the second waiver request, regarding the no stacking rule, Jefferson noted that contrary to the comments of the Plaintiff's

4

counsel, Prisley's re-subdivision application would create "three lots with three houses stacked one behind the other." (*Id.*) As to the third waiver, regarding the number of rear lots, Jefferson observed that because the original subdivision would need to be accounted for in Prisley's re-subdivision application, Prisley's proposal would result in one front lot and two rear lots—yielding 66% rear lots and not merely 50% rear lots as the Plaintiff had claimed. (*Id.*) In addition to the fact that Prisley's waiver requests were first submitted at a third scheduled public hearing and were thus untimely, Jefferson also noted that there was nothing "unique" about Prisley's desire to subdivide his lot for financial gain within the meaning of the waiver-authorizing regulation. (*Id.*) She also observed that to approve the waivers would contravene the November 2012 Superior Court decision upholding the Commission's denial of Prisley's re-subdivision application, which found adequate record support for the Commission's determination that Prisley's application was not compliant with these same three regulations. (*Id.*; *see also* Nov. 2012 Decision at 3–4, 7.)

The Commission reviewed Jefferson's memorandum and considered Prisley's waiver requests at a February 19, 2015 meeting, although it noted it was not obligated to do so because the waiver requests were not submitted at the time of the application as required. (*See* Tr. of Feb. 2015 Meeting at 3–4, Def.'s Ex. E, ECF No. 26-7.) Each of Prisley's waiver requests was rejected by unanimous vote. (*See id.* at 8–12.) Thereafter, so was the re-subdivision application. (*Id.* at 14–16.) In voting to deny Prisley's application, the Commission reiterated that in light of its decision to reject the requested waivers, the application was not compliant with the building rectangle, rear lot stacking, and rear lot percentage subdivision regulations discussed above. (*Id.* at 15.)

The Commission notified the Plaintiff of the denial of his application by letter dated February 27, 2015, citing five distinct reasons, each of which had been discussed at the February

5

19 meeting. (Def.'s Local Rule 56(a)(1) Statement ¶ 6; Jefferson Aff. Ex. 4.) Prisley again appealed the denial to the Superior Court, challenging all five of the Commission's stated reasons—non-compliance with each of the three regulations at issue, failure to submit proposed easements for access and maintenance of a fire protection plan, and lack of review by the Conservation and Inland Wetlands Commission and Connecticut River Area Health District. (*See* August 29, 2016 Decision at 3, Def.'s Ex. G, ECF No. 26-9.) The Superior Court rejected Prisley's argument that the Commission's denial of Prisley's waiver requests exceeded its authority (*id.* at 6) and found the Commission's application of the stacking and rear lot percentage regulations to be supported by substantial evidence. (*Id.* at 8.) Because the court "found a number of reasons" to sustain the Commission's decision when it needed only one, the court did not address the other bases for Prisley's appeal. (*Id*. at 8–9.)

On June 22, 2018, Prisley filed this action against the Commission pursuant to 42 U.S.C. § 1983, alleging a violation of his right to equal protection of the law guaranteed by the Fourteenth Amendment to the United States Constitution. (Compl. ¶ 13, ECF No. 1.) He alleges that the Commission attributed its denial to Prisley's failure to comply with Section 2.3.10 of the Subdivision Regulations because "one side of the Building Rectangle was not coincident with the street line, specifically . . . the street line along Cedar Lake Road," even though the Commission had recently "approved a subdivision application for 20 Hemlock Drive in which neither the existing lot nor the proposed lot had a side that occupied the same space as the street line."[1] (*Id.* ¶¶ 7–8.) Jefferson reviewed this alleged comparator, which Prisley had brought to the

---

[1] While Prisley's complaint identifies the property located at 20 Hemlock Drive as the only comparator to support his equal protection claim, he cited three additional properties in his responses to the Defendant's interrogatories. (*See* Def.'s Ex. H at 3, ECF No. 26-10.) At oral argument, however, the Plaintiff disavowed his reliance on these three properties and submitted that the property located at 20 Hemlock Drive is the only alleged comparator sufficiently similar to the subject Property to survive the Defendant's motion for summary judgment.

Commission's attention at the time of his application, and determined that the property located at 20 Hemlock Drive "is not comparable to the plaintiff's lot because the subdivision resulted in two conforming front lots" with 7.54 acres and 302.65 feet of frontage and 3.82 acres and 247.32 feet of frontage comprising Lots A and B, respectively. (Jefferson Aff. ¶ 14.) Moreover, according to Jefferson, "[w]hile the building rectangle on lot B was shown at the desired house location, I reported at the hearing that the building rectangle fit at the street line." (*Id.*) The minutes of the Commission meeting on the application for 20 Hemlock Drive reflect that it was for a two-lot re-subdivision that "meets all the requirements of the Subdivision Regulations," and that it was approved unanimously by the Commission. (December 10, 2019 Meeting Minutes at 1, Jefferson Aff. Ex. 5.)

**Discussion**

Two different theories of equal protection liability could potentially arise from the type of challenge Prisley poses to governmental action.[2] First, a plaintiff could prevail on a theory of selective treatment based upon a showing "that (1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible

---

[2] The Court questions, as a threshold matter, whether the Commission is a "person" subject to suit for purposes of 42 U.S.C. § 1983. *Compare, e.g.*, *Farmington-Girard, LLC v. Planning & Zoning Comm'n of City of Hartford*, No. 3:17-CV-1915 (MPS), 2019 WL 935500, at *10–12 (D. Conn. Feb. 26, 2019) (explaining that under Connecticut law, the municipality is the proper defendant to a Section 1983 suit, and finding that in the absence of statutory authority conferring distinct legal status upon a municipal department such that it can sue and be sued, the Planning and Zoning Commission of the City of Hartford is not a "person" for purposes of Section 1983), *and Watrous v. Town of Preston*, 902 F. Supp. 2d 243, 255–58 (D. Conn. 2012) (same, and holding that the Town of Preston Inland Wetlands and Watercourses Commission is not a legal entity that can be sued under Section 1983), *with Pappas v. Town of Enfield*, 18 F. Supp. 3d 164 (D. Conn. 2014), *aff'd*, 602 Fed. Appx. 35 (2d Cir. 2015) (addressing the merits of Section 1983 claim against, *inter alia*, the Enfield Planning and Zoning Commission without discussion as to whether the entity was a proper party to the suit), *and Arrigoni Enterprises, LLC v. Town of Durham*, No. 3:08-CV-520 (AWT), 2011 WL 4572025, at *7–*8 (D. Conn. Sept. 30, 2011), *adhered to in relevant part on reconsideration*, 2012 WL 13020055 (D. Conn. Feb. 14, 2012), *aff'd on different grounds*, 629 Fed. Appx. 23 (2d Cir. 2015) (holding that local planning and zoning commissions can be sued for the allegedly unconstitutional actions of their officers under *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Because the Defendant does not raise this issue and because it is apparent to the Court that the Plaintiff has otherwise set forth insufficient evidence to withstand a motion for summary judgment on his equal protection claim, the Court assumes for purposes of the instant motion only that the Plaintiff can proceed with a claim against the Commission.

considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980). Second, the Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (*per curiam*). At oral argument and in his opposition to the motion for summary judgment, Prisley confirmed that he alleges only a "class of one" theory of equal protection liability as contemplated in *Olech.*

To prevail on such a "class of one" claim, the Second Circuit requires "an extremely high similarity between [the plaintiffs] and the persons to whom they compare themselves,"—that is, the "plaintiff must be *prima facie* identical to the persons alleged to receive irrationally different treatment." *Progressive Credit Union v. City of New York*, 889 F.3d 40, 49 (2d Cir. 2018) (quotation marks and citations omitted). "The purpose of requiring sufficient similarity is to make sure that no legitimate factor could explain the disparate treatment." *Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012).[3]

---

[3] The Commission identifies a prior split among courts in this Circuit regarding the "similarly situated" standard applied in selective enforcement (*i.e.*, *LeClair*) versus "class of one" (*i.e.*, *Olech*) cases. (*See* Def.'s Mem. at 12–13). The Second Circuit recently clarified the relationship between these two iterations of equal protection law. The court explained that while both theories "require a showing that the plaintiff was treated differently from another similarly situated comparator, they differ in at least two key respects." *Hu v. City of New York*, 927 F.3d 81, 93 (2d Cir. 2019). Specifically:

> First, unlike a malice-based *LeClair* claim, an *Olech* claim does not require proof of a defendant's subjective ill will towards a plaintiff. Instead, a plaintiff can prevail on an *Olech* claim on the basis of similarity alone. However, the similarity standard for an *Olech* claim is more stringent than the standard for a *LeClair* claim. While *Olech* requires an "extremely high" degree of similarity between a plaintiff and a comparator, *LeClair* merely requires a "reasonably close resemblance" between a plaintiff's and comparator's circumstances.

*Id.* Thus, unlike a "typical, class-based Equal Protection claim, . . . in an *Olech* claim, the disparate treatment and impermissible motive inquires are virtually one and the same." *Id.* at 94 (quotation marks and citation omitted). "An *Olech* claim asserts that the distinction between the plaintiff's case and those similarly situated is so arbitrary and irrational that it fails to pass even the 'minimal' equal protection standard: that distinctions among the objects of government action must be rationally related to a legitimate government objective." *Id.*

"Where a plaintiff challenges a zoning decision, that standard requires [him] to identify comparators who are similarly situated to [him] with regard to the zoning board's 'principal reasons' for denying the application." *Pappas v. Town of Enfield*, 602 Fed. Appx. 35, 36 (2d Cir. 2015) (summary order) (quoting *Fortress*, 694 F.3d at 223–24).  Ultimately, Prisley must identify sufficient evidence for the fact-finder to conclude "that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." *Progressive Credit Union*, 889 F.3d at 49 (quoting *Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55, 60 (2d Cir. 2010)); *accord Hu*, 927 F.3d at 94. "While that showing is generally a 'fact-intensive inquiry,' a court may nevertheless 'grant summary judgment on the basis of lack of similarity where no reasonable jury could find that the persons to whom the plaintiff compares [him]self are similarly situated.'" *Pappas*, 602 Fed. Appx. at 36 (quoting *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (ellipses omitted)).

The Commission seeks summary judgment on Prisley's equal protection claim because there is insufficient evidence for a jury to identify the existence of a similarly situated comparator so as to establish differential treatment.  The Commission also argues that the doctrines of *res judicata* and collateral estoppel bar Prisley from relitigating the denial of his subdivision application, citing the Superior Court's 2012 adjudication of Prisley's appeal from the Commission's adverse decision on his 2010 application.  By admitting to the Defendant's Local Rule 56(a)(1) Statement, Prisley acknowledges that the application for the property located at 20 Hemlock Drive is not comparable to that which he submitted for the Property "because the subdivision resulted in two conforming front lots."  (Def.'s Local Rule 56(a)(1) Statement ¶ 36.)

He nonetheless argues that the Commission has failed to establish that the differences between the two re-subdivision applications were material as a matter of law and contends that a reasonable fact finder could therefore conclude that Prisley was treated differently without justification. He also argues that issue or claim preclusion do not bar the present action because Prisley was required to exhaust his remedies in the state courts, which did not consider his constitutional claims.[4]

The Court agrees with the Commission that Prisley has not set forth sufficient evidence—or truly any evidence—that would enable a reasonable fact finder to conclude that the two re-subdivision applications at issue were *prima facie* identical. As noted above Prisley has admitted that the property located at 20 Hemlock Drive "is not comparable to the Plaintiff's lot because the subdivision resulted in two conforming front lots," (Def.'s Local Rule 56(a)(1) Statement ¶ 36) whereas "Plaintiff could not configure his property with the building rectangle to create the front lot." (*Id*. ¶ 33.) "Approval of the [Plaintiff's] resubdivision," on the other hand, "would result in one frontage lot and two rear lots creating 66% rear lots." (Jefferson Mem. at 3.) In addition, Jefferson found "that the building rectangle fit at the street line" for the application for 20 Hemlock Drive (Jefferson Aff. ¶ 14), whereas Plaintiff sought a waiver of the building rectangle requirement for the Property. (*Id*. ¶ 10.) Indeed, that the two re-subdivision applications are not similarly situated is evidenced by the very fact of the Plaintiff's requested waivers—which were itself acknowledgements "that he was unable to meet" each of the three regulations at issue. (Def.'s Local Rule 56(a)(1) Statement ¶ 5.) At the hearing concerning the application for the property at 20 Hemlock Drive, by contrast, "Jefferson noted that the application meets all the requirements of

---

[4] The Second Circuit has recognized that "[a]lthough it is the ordinary practice of this court to decide a res judicata claim before reaching the merits, when the res judicata issue raises difficult and important questions of federalism and comity, and the merits can be readily decided in favor of the party urging preclusion, we think it better to avoid the unnecessary resolution of the res judicata question." *Pettis Moving Co. v. Roberts*, 784 F.2d 439, 440–41 (2d Cir. 1986). Because the merits of this matter can be readily decided in favor of the Commission, the Court likewise declines to wade into the question of the preclusive effect of the prior Superior Court decision.

the Subdivision Regulations." (December 10, 2019 Meeting Minutes at 1.)  Prisley does not challenge any of these factual assertions.

Thus, the Commission has satisfied its burden of establishing that there is no genuine issue of material fact regarding whether Prisley's application was similarly situated to the application regarding 20 Hemlock Drive—it was not.  As a result, it is Prisley's burden to "come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *E.g.*, *CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (quotation marks and citation omitted).  Yet Prisley has not identified any evidence to support his contention that the application for 20 Hemlock Drive, like his property, did not satisfy the building rectangle requirement.  As indicated, the undisputed fact is that it did.  Nor has Prisley put forth evidence that would enable the fact finder to otherwise determine that the two properties were similarly situated.  Indeed, even if the application for 20 Hemlock Drive included a non-compliant building rectangle, Prisley offers no evidence to overcome the Commission's contention that the two properties were dissimilar by virtue of the fact that Prisley's application would have yielded two rear lots—thus violating not one but two subdivision regulations, while the application at 20 Hemlock Drive yielded two front lots.  In short, "[a]bsent any evidence that those other projects raised any of the same concerns cited by the Commission to explain its denial of [Prisley's] application, [Prisley] cannot carry [his] burden of establishing that 'no rational person could regard [Prisley's] circumstances . . . to differ from those of [his] comparators to a degree that would justify the differential treatment." *Pappas*, 602 F. Appx. at 36 (quoting *Fortress*, 694 F.3d at 222).  Summary judgment must accordingly enter for the Commission.

**Conclusion**

For the foregoing reasons, the Defendant's motion for summary judgment is granted. The Clerk of Court is directed to enter judgment in favor of the Defendant and to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 5th day of August 2020.

 */s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE